UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 19 CR 10040 |
| | ) | |
| ANDREW RUDIN, | ) | Hon. Judge Fowlkes |
| | ) | |

**DEFENDANT RUDIN'S CONSOLIDATED MOTIONS AND MEMORANDA
TO DISMISS AND FOR DISCLOSURE OF GRAND JURY MATERIALS**

Now comes the Defendant, Andrew Rudin, by and through his attorney Nishay K. Sanan,

and respectfully requests that this Court dismiss count one of the indictment or order the disclosure

of the requested grand jury materials, pursuant to Federal Rules of Criminal Procedure 6 and 12, as

well as the Supreme Court's decision in *Ruan v. United States*, 142 S. Ct. 2370 (2002).

## I.   Background

Dr. Andrew Rudin is charged with one count of conspiracy to distribute and dispense controlled

substances in violation of 21 U.S.C. § 846. ECF No. 3. On April 15, 2019, the grand jury returned its

15-count indictment charging Dr. Rudin, as well as Dr. Alexander Alperovich, with conspiracy in

count one, and charging Jeffrey Young with conspiracy, as well as fourteen substantive violations of

the Controlled Substances Act. *Id.*

Young was a licensed nurse practitioner who allegedly used his medical practice, Preventagenix,

to "knowingly and intentionally prescribe Fentanyl, Oxycodone, and Hydrocodone," as well as

benzodiazepines and other controlled substances, "outside the course of professional practice and

not for a legitimate medical purpose." *Id.* at ¶ 8. In Tennessee, nurse practitioners are required to

have supervising physicians and their roles and responsibilities are controlled by the Tennessee State

Board of Medical Examiners with authority from the State. *Id.* at ¶ 17. Dr. Rudin was allegedly

involved in the conspiracy in his role as Young's supervising physician for a period of about 5

months, from August 2016 until January 2017. *Id.* at ¶ 32. At all relevant times, Dr. Rudin was a

medical doctor, licensed by the State of Tennessee and registered with the DEA, who was

authorized to prescribe controlled substances. *Id.* at ¶ 3.

The trial of this matter is scheduled to begin on November 7, 2022. ECF No. 236. Dr. Rudin

has previously filed Motions to Dismiss the Indictment (ECF No. 109-111), which the Court denied.

ECF No 125. However, since then, the Supreme Court ruled in *Ruan v. United States.* 142 S. Ct. 2370

(2002). The Court's ruling has fundamentally changed the analysis for cases in which doctors who

are authorized to prescribe are charged with violations of the Controlled Substances Act and has

thus given rise to new grounds for dismissal.

## II.     Motion to Dismiss

Count one of the indictment charging Dr. Rudin with conspiracy must be dismissed because it

fails to sufficiently allege his subjective intent or knowledge of Young's unauthorized prescriptions.

A defendant may challenge the sufficiency of an indictment for failing to state an offense at any time

prior to trial. Fed. R. Crim. P. 12(b)(3)(B)(v). "An indictment is sufficient if it (1) "contains the

elements of the offense charged and fairly informs a defendant of the charge against which he must

defend" and (2) "enables him to plead an acquittal or conviction in bar of future prosecutions for

the same offense." *United States v. Anderson*, 605 F.3d 404, 411 (6th Cir. 2010) (citing *Hamling v. United*

*States,* 418 U.S. 87, 117 (1974)). Further, "a general description of the offense must be accompanied

with such a statement of the facts and circumstances as will inform the accused of the specific

offense coming under the general description, with which he is charged." *Hamling*, 418 U.S. at 117.

The elements that the government must prove beyond a reasonable doubt to sustain a

conviction for a drug conspiracy are: "(1) an agreement to violate the drug laws; (2) knowledge and

intent to join the conspiracy; and (3) participation in the conspiracy." *United States v. Williams*, 998

F.3d 716, 728 (6th Cir. 2021) (*internal citations omitted*). The drug law that the coconspirators allegedly

agreed to violate in this case is section 841(a)(1) of the Controlled Substances Act. This section

provides that "except as authorized…. it shall be unlawful for any person knowingly or

intentionally… to manufacture, distribute, or dispense… a controlled substance." 21 U.S.C. §

841(a)(1). Registered medical doctors, such as Dr. Rudin, are authorized to prescribe controlled

substances. A prescription is "authorized," if it is "issued for a legitimate medical purpose by an

individual practitioner acting in the usual course of his professional practice." 21 C.F.R. § 1306.04(a).

In its recent ruling in *Ruan,* the Supreme Court altered the scienter requirements for convicting

doctors accused of distributing controlled substances from an objective to a subjective standard. 142

S. Ct. at 2376. There, two doctors, who actively practiced medicine and possessed licenses

permitting them to distribute controlled substances, had been convicted of violating section 841. *Id.*

at 2375. Both had argued at trial and on appeal that their prescriptions had complied with objective

medical standards or, even if not, they had not knowingly or intentionally deviated from those

standards. *Id.* The Court was asked to clarify the *mens rea* requirements when a doctor claims the

authorization exception. *Id.* at 2376. The Court phrased its issue as,

> To prove that a doctor's dispensation of drugs via prescription falls within the
> statute's prohibition and outside the authorization exception, is it sufficient for the
> government to prove that a prescription was *in fact* not authorized, or must the
> government prove that the doctor *knew or intended* that the prescription was
> unauthorized?

*Id.* at 2375. The Court ultimately held that section 841's "knowingly or intentionally" *mens rea* applied

to the statute's "except as authorized," clause. *Id.* at 2382. This means that once a defendant meets

the burden of producing evidence that his or her conduct was "authorized," the government must

prove beyond a reasonable doubt that the defendant knowingly or intentionally acted in an

unauthorized manner." *Id.*

While *Ruan* was focused on the required proof for a conviction, the Court's treatment of the

authorization requirement as an element of the offense has led courts to conclude that it must also

be pled in the indictment. *See, e.g., United States v. Spayd*, No. 3:19-cr-00111, 2022 U.S. Dist. LEXIS 165323 (D. Alaska, Sept. 13, 2022) (citing *Ruan*, 142 S. Ct. at 2378, 2380) ("if a clause is treated as an element for any purpose, [as it was by the Supreme Court in *Ruan*], it would seem this treatment should extend to the constitutional requirements for an indictment"). *But see United States v. Spivak, et al.*, No. CV 22-343, 2022 U.S. LEXIS 162608 (E.D. Pa. Sept. 6, 2022) ("the *mens rea* language of section 841 requires the United States to prove beyond a reasonable doubt – not plead – in its criminal prosecution the defendant knowingly or intentionally acted in an unauthorized manner").

The indictment here fails to adequately plead that Dr. Rudin acted without authorization. It does allege that Young "knowingly or intentionally acted in an unauthorized manner," but it fails to do the same as to Dr. Rudin. ECF No. 3, ¶ 1. It alleges that Dr. Rudin "agreed to be Young's supervision physician," which Dr. Rudin is authorized to do "pursuant to Chapter 0880-6 of the Rules of the Tennessee State Board of Medical Examiners." *Id.* at ¶ 29. It alleges that Dr. Rudin allowed his name to appear on Young's prescriptions, as he is not only authorized, but required to do under Tennessee law. *Id.* at ¶ 30; Tenn. Code Ann. § 63-7-123(b)(3)(A).

Dr. Rudin is alleged to have known that Young was acting in an unauthorized manner while under his supervision. ECF No. 3, ¶ 34. However, there is no statement of the facts or circumstances alleged to support Dr. Rudin's knowledge or intent as to how he personally acted in an unauthorized manner or how he knowingly intended to facilitate Young doing so. For example, there is an allegation that Young dispensed controlled substances without ever seeing the patient, accompanied by the general allegation that Dr. Rudin knew that. *Id.* However, there is no factual support for Dr. Rudin's own intent or knowledge of the facts that cause the prescriptions to be unauthorized. For example, there is no allegation that Young created a record reflecting that he prescribed opioids without seeing a patient, submitted that record to Dr. Rudin, who then reviewed it, and could tell from its contents that the prescription was unauthorized. Other than a general

4

allegation that Young acted "under the purported supervision" of Dr. Rudin and "with [his] knowledge," the indictment fails to provide the facts and circumstances supporting this element that must be proven for a conviction. *Id.*

As the Supreme Court explained in *Ruan*, "it is the fact that the doctor issued an unauthorized prescription that renders his or her conduct wrongful, not the fact of the dispensation itself. In other words, authorization plays a crucial role in separating innocent conduct – and, in the case of doctors, socially beneficial conduct – from wrongful conduct." 142 S. Ct. at 2377. Dr. Rudin was a medical doctor who was authorized to dispense controlled substances and authorized to supervise a nurse practitioner who was doing the same. Following the Supreme Court's ruling in *Ruan*, his criminal liability depends on whether he subjectively knew or intended for Young to issue unauthorized prescriptions. Here, that crucial element is not sufficiently pled, and thus, the indictment against him must be dismissed.

### III.     Motion for Disclosure of Grand Jury Materials

Should the Court find that the indictment is sufficient, Dr. Rudin requests that this Court grant disclosure of grand jury materials. Specifically, the Defendant requests disclosure of the instructions provided to the grand jury when it returned the indictment against him, as well as any transcripts or other grand jury materials that bear specifically on the scienter requirement. Such material is required to avoid injustice after the Supreme Court's recent ruling in *Ruan*. 142 S. Ct. 2370.

Federal Rule of Criminal Procedure 6 generally bars the disclosure of grand jury materials but allows an exception "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). A defendant requesting disclosure of grand jury materials must demonstrate a "particularized need," for the secrecy of the proceedings to be lifted in a limited manner. *In re Antitrust Grand Jury*, 805 F.2d 155, 161 (6th Cir. 1986) (citing *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211 (1979). An

indictment is subject to dismissal if there were errors in grand jury proceedings that prejudiced the defendant. *Bank of Nova Scotia v United States*, 487 U.S. 250, 254 (1988). Prejudice means that the errors "substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." *Id.*

Here, the requested material may provide grounds to dismiss the indictment in that the grand jury could not have been instructed properly on the *mens rea* requirements described by the Supreme Court in *Ruan,* a ruling that came out after Dr. Rudin had already been indicted. 142 S. Ct. 2370. As described above, the Court's ruling in *Ruan* fundamentally altered the standards for defendants similarly situated to Dr. Rudin, medical doctors with authorization to prescribe, by shifting the focus to a subjective standard. *Id.* At the time of Dr. Rudin's indictment, the standard for scienter was objective and thus, the grand jury would have been instructed as such. *See e.g., United States v. Geralt*, 683 Fed. Appx. 394, 404 (6th Cir. 2017) (quoting *United States v. Volkman*, 797 F.3d 377, 386 (6th Cir. 2015))(Describing the standard for doctors accused of controlled substances offenses as objective and based on the medical community: "knowingly distributing prescriptions outside the course of professional practice."); *Volkman*, 797 F.3d at 387 (affirming instruction that "a physician's own individual treatment methods do not, by themselves, establish what constitutes a "usual course of professional practice."); *See also United States v. Ruan*, 966 F.d 1101, 1120, 1166-67 (11th Cir. 2020) (*vacated by Ruan*, 142 S. Ct. 457) (upholding conviction because "a doctor's subjective belief that he is meeting a patient's medical needs by prescribing a controlled substance is not a complete defense," rather, "whether a defendant acts in the usual course of his professional practice must be evaluated on an objective standard, not a subjective standard").

Dr. Rudin's need for disclosure outweighs the need for secrecy because it is likely that the use of an objective standard substantially influenced the grand jury's decision to indict. The Supreme Court recognized that the element at issue here – scienter as it relates to authorization – is "crucial in

6

separating innocent conduct, and in the case of doctors, socially beneficial conduct, from wrongful conduct." *Ruan*, 142 S. Ct. at 2377. This risk of overdeterrence, as well as the harsh penalties associated with controlled substances violations, led the Court to adopt a stronger scienter requirement for doctors claiming authorization to prescribe. *Id.* at 2377-78. The government cannot be faulted for instructing the grand jury on the law as it existed at the time, but here, where the accused doctor was not himself dispensing controlled substances but was operating as a supervising physician to someone who allegedly was, his subjective knowledge and intent are especially key to distinguish criminal conduct from innocent or merely negligent conduct.

The instructions provided to the grand jury will clarify its understanding of the required *mens rea* for the offense and the "except as authorized clause," and thus, may provide a basis for dismissal. Similarly, the transcripts or other materials directly relevant to the scienter requirement will likewise indicate whether the grand jury indicted based on an understanding of the law that is inconsistent with *Ruan*. Because it this element and the recent change in law that give rise to potential grounds for dismissal, Dr. Rudin has limited his request to only those materials that are directly relevant. If the grand jury was improperly instructed on this most crucial element, that likely "substantially influenced the grand jury's decision to indict." *Bank of Nova Scotia*, 487 U.S. at 254 Therefore, the grand jury materials requested may provide grounds for dismissal and the Court should grant Dr. Rudin's request for disclosure.

## IV.     Conclusion

For these reasons, the Defendant, Andrew Rudin, respectfully requests that this Court dismiss the indictment against him, or in the alternative, that this Court grant his request for disclosure of the grand jury materials relevant to the recent change in law.

Respectfully submitted,

*/s/ Nishay K. Sanan*
nsanan@aol.com


Nishay K. Sanan, Esq.
53 W. Jackson Blvd., Suite 1424
Chicago, Illinois 60604
Tel: 312-692-0360
Fax: 312-957-0111


## CERTIFICATE OF SERVICE

The undersigned, an attorney, first being duly sworn on oath, states that a copy of Motion was served upon the parties who have filed appearances in this matter, by electronically filing the same pursuant to rules of ECM on October 12, 2022.

*/s/ Nishay K. Sanan*